## LILLIAN C. MORRIS vs. THE WINCHESTER REPEATING ARMS COMPANY.

Third Judicial District, Bridgeport, April Term, 1901.
ANDREWS, C. J., TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

In actions of negligence the chief practical difference between a trial to the court and a hearing in damages after a default or upon demurrer overruled, is that the burden of proof as to negligence and contributory negligence rests upon the plaintiff in the one case and upon the defendant in the other. In either case the trial involves

Morris v. Winchester Repeating Arms Co.

an adjudication as to whether the facts alleged and proven are legally sufficient to support the judgment rendered, and the correctness of such adjudication may be reviewed on appeal to this court.

In the present case the defendant, after judgment for substantial damages had been rendered against it, moved and requested the court to find the facts upon which its judgment was founded, to set them forth specially, and to cause such finding to become part of the record, pursuant to §§ 1107 and 1111 of the General Statutes. The trial court had already prepared a finding of the facts upon which the judgment was based, which accompanied the judgment file, and thereafter made no other or further compliance with the defendant's motion and request. *Held* that under these circumstances that finding was evidently regarded by the trial court, and should be treated by this court, as a part of the judgment record.

Error may be assigned in respect to the conclusions drawn from facts thus made a part of the judgment record, although such judgment is rendered upon demurrer overruled.

The request to specially set forth the facts, referred to in § 1111, should ordinarily precede the judgment, while the motion to find the facts, authorized by § 1107, should follow the judgment. The use of both motion and request is, however, unnecessary, and is not good practice.

It is the usual and better practice, in judgments on default or demurrer overruled, not to set forth in the judgment file or record the facts which support the conclusion of actionable negligence. If error is claimed in reaching the facts found and the conclusions drawn from them, the question can be presented more clearly by simply including the facts found, in their proper form, in the finding made on appeal.

In an action to recover damages for an injury to her hand the plaintiff, a mill operative, alleged and relied upon two grounds of negligence: first, that the defendant did not warn her of the dangerous nature of the work required, and second, that the machine was defective and was knowingly permitted by the defendant to remain in that condition. *Held* that the first ground of negligence was negatived by the facts found, and that in reaching the conclusion of negligence upon the second ground, the trial court had erred in finding certain facts, material to such conclusion, without any evidence at all.

Among other facts, the trial court found that after the plaintiff's injury the defendant issued an order requiring the power to be turned off every time the operator had occasion to remove cartridge shells from the dial of the machine, and that if such a rule had been in force at the time of the accident to the plaintiff it could not have occurred. *Held* that the mere fact that such a rule was made after

the accident did not justify the conclusion of negligence upon the part of the defendant in not having made it before.

The complaint alleged that the plaintiff was a mill operative, but nothing as to any other occupation or employment. *Held* that evidence of her ability to earn money as an accompanist on the piano was not relevant to show the extent of the injury, and that as no damages had been alleged and claimed on that ground, none could be recovered.

A master cannot evade the legal duty he owes to his servants by a mere form in the mode of their employment and in fixing their compensation.

A trial judge may properly refuse to mark "proven" or "not proven" against such paragraphs of the draft finding as are not framed in accordance with the rules.

When a trial judge has once marked certain paragraphs of the draft finding as "proven" or "not proven," and filed the draft thus marked as his finding for appeal, and subsequently alters such marking, the fact of such alteration should be made apparent on the record, otherwise it will be corrected by this court to correspond with the fact.

Argued April 16th—decided May 29th, 1901.

ACTION to recover damages for personal injury claimed to have been caused by the defendant's negligence, brought to the Superior Court in New Haven County and heard in damages to the court, *George W. Wheeler, J.;* facts found and judgment rendered for the plaintiff for $1,600, and appeal by the defendant for alleged errors in the findings and rulings of the court. *Error, judgment set aside and new trial granted.*

It appears from the facts as found by the trial court, that the plaintiff, a servant of the defendant, was injured while operating a feed-dial upright press, used for the purpose of reducing cartridge shells to a desired size and shape, and known as the Butterfly Clutch Press. The press is wholly made of metal, except the treadle which is of wood. The base or platform of the press is supported on iron legs. The bottom of the base is about twenty-five inches from the floor. On top of the base of the press is a circular plate, on top of which revolves the dial on which are placed the shells intended to be reduced to proper shape. Above the dial is the gate, which is a piece of iron into the bottom of which are

inserted certain dies for reducing the shells. The sides of
the gate are so arranged as to operate up and down between
two upright ways attached to the base of the press. The
dial projects towards the operator about four and one half
inches beyond the base of the press. A wooden bench sup-
ported on wooden legs extends along the front and sides of
the press. The sides of this bench are slightly raised so as
to furnish a place for the deposit of the shells. The bench
extends in front about eleven inches beyond the base of the
press, and about seven and one half inches beyond the cir-
cular plate supporting the dial. From the bottom of the
bench to the floor is about twenty-five inches. When the
machine is in operation the gate moves rapidly up and down,
rising and falling a distance of three and one half inches.
The operator, sitting in front of the press and close to the
wooden bench, feeds shells to the dial which revolving brings
each shell under the appropriate die inserted in the gate, and
after each die has engaged the shell, which is thus reduced
to the proper size and shape, the shell drops into the bench
beneath. Power is transmitted to the press by means of a
belt which passes over the hub of the fly-wheel. The oper-
ator turns off this power each noon and evening by means
of a shipper. The power does not move the machinery of
the gate and dial, except when the treadle is pressed down.
When the machine is not operating the gate is at rest; its
bottom is then about three and one half inches above the
dial; and the end of the treadle which is nearest the oper-
ator is then about six inches above the floor. To set the
machine in motion the operator places her foot on the treadle,
pressing it down about six inches to the floor, and so long
as the treadle is held in that position the gate moves rapidly
up and down, the dies engaging the shells on the revolving
dial. When the pressure is removed from the treadle it
rises to its first position, the machine ceases to operate, and
the gate is at rest. It is a part of the operator's duty to
ascertain whether the shells are scratched in the process of
reducing. This may be done by taking them up, after the
completion of the process, just before they would drop into

the bench below; but it is also necessary, frequently, to take the foot from the treadle, thus stopping the operation of the machine and bringing the gate to rest, and to take out from underneath the gate the shells for examination, between the first and second reducing thereof. While the plaintiff had her hand under the gate in the performance of this duty, the gate fell and crushed her fingers, and this is the injury complained of.

Other facts material to the decision appear in the opinion.

*Henry Stoddard*, with whom was *James T. Moran*, for the appellant (defendant).

*J. Birney Tuttle* and *James Bishop*, for the appellee (plaintiff.

HAMERSLEY, J. The court below rendered judgment for the plaintiff (including substantial damages) upon demurrer overruled.

In actions of tort, damages in a judgment upon default or demurrer overruled are assessed by the court, when the defendant, within the prescribed time, gives written notice of his intention to suffer a default or to refuse to plead over. Public Acts, 1897, Chap. 190, p. 884. Upon a hearing in damages in actions for negligence, the defendant cannot contradict the negligence as alleged in the complaint, nor the right of the plaintiff to maintain such action, unless he files a written notice stating the allegations and subject-matter he intends to contradict and his intention to deny such right, and to prove any specified matter of defense. Public Acts, 1897, Chap. 220, p. 924. When these statutory notices are not filed, the only questions that can arise upon the hearing relate to the amount of damages resulting from the negligence as alleged; but when they are filed the court cannot assess substantial damages, if the defendant disproves the negligence as alleged or establishes any valid defense of which notice has been given; and in such case the assessment of damages necessarily involves an adjudication upon the facts alleged in

the complaint practically put in issue by the notice, and upon the sufficiency of the facts as proved to establish the legal liability of the defendant, and the judgment for all practical purposes determines the question of actionable negligence as in a trial to the court upon an answer to the complaint; the essential difference being that in a trial upon issues framed by formal pleadings, the burden of proof in respect to the negligence, including the absence of contributory negligence, rests upon the plaintiff, while upon a hearing in damages that burden rests upon the defendant. It must be noted, however, that this is mainly a rule as to order and preponderance of proof. If there is no evidence as to negligence the substantial damages proved must be assessed, but if there is evidence, then the question is to be determined by that evidence, and the court must give to the facts it may find established by a preponderance of proof, their legitimate legal effect. *Julian* v. *Stony Creek Red Granite Co.*, 71 Conn. 632, 637; *Lawler* v. *Hartford Street Ry. Co.*, 72 id. 74, 85. In the present case the statutory notices were filed. Our statutes of procedure relating to the presentation of errors in law to this court for correction, apply in general to a judgment on default or demurrer overruled, thus involving an adjudication on the facts alleged in the complaint, and on the sufficiency of the facts found to establish actionable negligence.

Prior to the rendition of judgment the trial court prepared a "finding of facts upon which judgment is based," and this finding was filed on the day of rendition of judgment. The defendant moved and requested the court to find the facts on which its judgment is founded, to specially set forth those facts and cause such finding to become a part of the record, pursuant to §§ 1107 and 1111 of the General Statutes. This motion appears to have been filed subsequent to the rendition of judgment. The request to specially set forth the facts referred to in § 1111 would ordinarily precede the judgment, as the section contemplates the incorporation of these facts in the judgment file; but the motion to find the facts, in pursuance of § 1107, would naturally follow the judgment. The facts as found are made a part of the trial record, but are

ordinarily added after the completion of the judgment file. The use of the request and also of the motion is not good practice. In view of the fact that the finding accompanying the judgment file is the only compliance with the request and motion of the defendant, we think that finding was treated by the trial court, and should be treated by this court, as a part of the judgment record.

It may be doubtful whether §§ 1107 and 1111 as first enacted applied to a judgment like the one before us. They have been retained in substance through various modifying changes in procedure, and the extent of such modification has not been very clearly expressed, so that it is difficult to apply a strictly literal construction to all existing legislation on this subject. We have held that these sections, in connection with cognate legislation, should be liberally construed in furtherance of the intention to enable this court to exercise its jurisdiction in correcting errors in law in conclusions or inferences, ultimate or subordinate, that may be drawn by the trial court from the facts which it has found. *Winsted Hosiery Co.* v. *New Britain Knitting Co.*, 69 Conn. 565, 575; *Nolan* v. *New York, N. H. & H. R. Co.*, 70 id. 159, 177; *Hoadley* v. *Savings Bank of Danbury*, 71 id. 599, 612.

It has been the usual and would seem the better practice, in judgments on default or demurrer overruled, not to set forth in the judgment file on record the facts supporting the conclusion of actionable negligence. When error is claimed in reaching the facts found and conclusions drawn from them, the question can be presented more clearly by simply including the facts found in their proper form in the finding for appeal. If, however, the court chooses to make them a part of the judgment record, whether with or without request, we think error may be assigned in respect to conclusions drawn from facts thus made a part of the record, although the judgment is rendered upon demurrer overruled. Our peculiar law relating to hearings in damages necessarily makes the judgment in such case somewhat of an anomaly, and the difficulties arising from such an anomalous condition must be solved by practical considerations.

The trial court has also made, upon defendant's request, a finding of facts for appeal. By the appeal the defendant attacks the judgment not only for errors in the conduct of the trial, but also for error in conclusions of law not fully apparent on the trial record. In order to present the latter claim the finding for appeal sets forth more in detail and in different form the facts included in the judgment record, and other facts insisted upon as material to the errors claimed in the conclusions of the court.

The main contention pertains to the legal sufficiency of the facts and conclusions on which the judgment is founded, and to errors in law claimed to have induced or influenced the court in reaching those facts and conclusions.

The subject of this contention lies within a narrow compass. The injury complained of was received while operating a feed-dial upright press used for the purpose of reducing cartridge shells to a desired size and shape, and resulted from the plaintiff's placing her hand under the gate of the machine, which struck and crushed her fingers. It is claimed that these conditions—the placing of the hand and the fall of the gate at that time—were due to the negligence of the defendant. The negligence charged consists in the failure of a master to perform the legal duty he owes to his servant, and is alleged in the complaint in two ways : 1. The defendant ordered the plaintiff to take out the shells from beneath the gate, between the first and second reducing thereof; to do this it was necessary for her to place her hand in a dangerous position under the dies; the defendant did not warn the plaintiff that said work was dangerous ; the negligence consisted in ordering the plaintiff to do this work without notifying her that said work was attended with great danger. 2. The machine was, to the knowledge of the defendant, in a dangerous and defective condition; the negligence consisted in allowing said machine to remain in said defective and dangerous condition, and in not providing safe appliances and machinery in conducting its business and for the use of the plaintiff as one of its servants.

*First.* Do the facts on which the judgment is founded

warrant the conclusion of the defendant's actionable negligence?

We think they do not, in respect to the first ground alleged (unless as to such portions of that ground as may be included in the second ground). It is apparent from the facts, that taking shells from the dial between the first and second reducing, by placing the hand under the gate, is a part of the necessary duty of the operator, is practically impossible unless the gate is at rest, and when the gate is at rest is not dangerous unless the machine is improperly constructed or in defective condition, or the operator disregards the instruction and warning given to the plaintiff by the defendant, "never to put her hand under the gate while the foot is on the treadle." We think it plain that the actionable negligence, if any, consisted, not in ordering the plaintiff to perform this necessary part of her employment, not in failing to warn the plaintiff of any danger known to the defendant which was so necessarily apparent as to be fully known to the plaintiff, but in allowing the plaintiff to perform this part of her employment upon a machine known to the defendant and not to the plaintiff to be in a defective and dangerous condition, and in not providing safe appliances and machinery for the use of the plaintiff as one of its employees. In other words, in order to support the judgment the second ground of negligence alleged must have been lawfully found.

The judgment record recites a large number of facts, ultimate, subordinate, and evidential. In this particular it goes much further than the statute requires, and the finding of many facts, apparently irrelevant to the conclusion actually reached, makes it a little difficult to ascertain on what facts the judgment was founded. As relevant to the conclusion of the defendant's negligence as the cause of the thing actually done resulting in the injury, the facts may be thus classed: those supporting the conclusion that the thing done might have occurred in any one of nine different ways, one or more of them implying that it was the result, either of the defendant's negligence in furnishing a machine of improper

construction or in defective condition, or of the plaintiff's
contributory negligence, or, of pure accident; those support-
ing the conclusion reached and found as a fact by the court
as to how the thing which caused the injury was done; those
supporting the conclusion that the machine in use was one
of a dangerous construction.

It is claimed that these facts do not warrant the conclusion
of actionable negligence—that some of them are necessarily
wholly inconsistent with that conclusion.    It is also claimed
that in reaching some of the essential facts an error in law
intervened, so material as to vitiate the judgment.    It will
be sufficient to consider the last claim.

*Second.* Is the exception that errors in law intervened in
reaching conclusions essential to support the judgment, well
taken?   We think it is.

The following facts appear as supporting, or as relevant to,
the conclusion of actionable negligence : It was a part of the
plaintiff's duty as an operator to frequently place her hand
under the gate when at rest, for the purpose of removing
shells for examination; this act is unattended with danger
in a machine operating normally, unless while the hand is
under the gate force is applied to the treadle sufficient to
move it far enough to put the machine in operation; the de-
fendant had instructed the plaintiff never to put her hand un-
der the gate when her foot was on the treadle; the danger
from moving the treadle so as to set the machine in motion
while the hand was under the gate was apparent and known
to the plaintiff; the plaintiff placed her hand under the gate
when it was at rest; the machine was operating normally;
before the hand was removed force was applied to the treadle
sufficient to put the machine in operation; in consequence of
the force so applied the machine was set in motion and the
injury inflicted.

Each of these facts is necessarily involved in the facts set
forth in the judgment record; that they are so necessarily
involved, by any reasonable reading of that record, is made
more certain by the finding for appeal.    In the defendant's
draft finding, the fact that at the time of the injury the ma-

chine was operating normally is set forth in paragraphs 82, 83 and 84, and as so set forth is a distinct statement of a fact necessarily involved in the facts recited in the judgment record. A motion to correct the finding for appeal so as to include a distinct statement of this fact, was made and denied. We think a distinct statement of this fact in the finding for appeal may fairly be regarded as material to the clear presentation of questions of law decided by the trial court, and it appears from the judgment record as well as from other facts found and stated in the finding for appeal, to have been admittedly and indisputably a fact found by the trial court. We have therefore treated the finding for appeal as if corrected in accordance with defendant's request.*

---

*Order on Application to Rectify Appeal.*

PER CURIAM. The defendant asked the trial court to incorporate in its finding for appeal this fact: At the time of the plaintiff's injury the machine and gate were working in the usual way and the gate came down as it was accustomed to do when the foot was on the treadle, and as it always did in its usual operation.

The fact was set forth in paragraphs 82, 83 and 84 of the draft finding. Against these paragraphs the trial judge marked "proven." The fact, however, that the paragraphs were so marked does not appear by the appeal record; on the contrary those paragraphs appear as marked "not proven." The defendant asks that the appeal may be corrected by stating that paragraphs 82, 83 and 84 of the draft finding were marked "Proven G. W. W." when the finding was originally filed December 4th, 1900, and were marked "Not proven G. W. W." when the finding was refiled January 4th, 1901. Upon discovery of the alteration the trial court was asked to make the necessary correction, and the request was denied.

The draft finding, in a case like this, is made by statute a part of the appeal record. Public Acts of 1897, Chap. 194, p. 890. The file of the case in an appeal to this court consists of a copy of all the files and records in the cause in the court from which the case is brought (not withdrawn after filing), certified by the clerk of that court. Rules of Court, p. 98. This file should be an accurate statement of facts of record; and if it is not, it may be made so upon an application to rectify, when the error is one that may affect the presentation of questions of law involved in the case. When a trial judge marks the paragraphs of a draft finding "proven" or "not proven," such marking becomes a part of that record for the purpose of presenting questions of law decided by the court. Rules of Court, p. 94. It is competent for a trial judge to alter such marking after it becomes a part of the record; but

These facts being found, it is apparent that the liability of the defendant may depend upon a finding that the treadle used in the machine could so easily be moved sufficiently to set it in operation, without the knowledge or fault of the operator, that a machine thus constructed is so unnecessarily dangerous as to make its use by the defendant actionable negligence. And such is the final conclusion reached by the trial court as decisive of defendant's liability.

This conclusion appears to be mainly drawn from the following facts set forth in the judgment record: The plaintiff accidentally got her chair, or her dress, or her person, against the treadle and moved it while her hand was under the gate; the treadle extended four or five inches beyond the face of the bench, and so rendered it liable, in case the chair should accidentally get on the treadle, or get against it so as to move it, or in case the operator or her clothes should move the treadle, to set the machine in motion and cause the gate to drop on the operator's hand; when the treadle is up (*i. e.*, when the gate is at rest) it is six and three eighths inches from the floor, and when it is pressed down (*i. e.*, the machine put in operation) it is five and one fourth inches from the floor; a weight on the treadle of three and one half pounds is sufficient to set the machine in motion, and it may thus be set in motion if the operator puts either her foot, or her chair, or her clothing, on or against the treadle, thus moving it; there is no reason why this treadle should not have been

in that case the fact of the change also belongs to the record, and if the marking is so entered that a change is not apparent, the record should be made to correspond with the fact. Such fact may be wholly insignificant; but it may be, as under all the circumstances appearing in the record in this case we think it is, material to the full and fair presentation of questions of law sought to be submitted for review by the appeal.

The facts stated in the application to rectify are fully supported by the depositions; and we think that in this case the failure of the adverse party to file any answer or affidavit, although duly notified and present at the taking of the depositions, should be regarded as conclusive that the facts stated in the application are undisputed. Rules of Court, p. 95.

The application to rectify is granted.

placed in the machine inside of the bench and about three inches from the floor; it would be impossible with such a treadle to have the chair of the operator move it or get on it; the modern treadle of a press is made of iron instead of wood, and is thus placed.

The inference of the trial court, that the mere contact of the chair or person of the operator against the treadle, or of her clothes, moved it sufficiently to set the machine in operation, must find support in the fact that a weight of three and one half pounds moving the treadle one and one eighth inches, would set the machine in operation. Now it appears from the finding for appeal that this fact was found wholly without evidence. It appears that a pressure of three and one half pounds continued until the treadle is pressed down six inches and substantially to the floor, is required to set the machine in operation. That the machine would be set in motion by moving the treadle one and one eighth inches was, therefore, a fact plainly material to the final conclusion of the court. Finding that fact without any evidence is an error in law, sufficient, as it seems to us, to vitiate a judgment induced to some extent by a fact thus erroneously found.

It is unnecessary to consider whether a new trial might properly be refused in case it clearly appeared from all the facts stated in the finding for appeal that the court might, upon those facts, reasonably reach the same conclusion without giving any weight to the fact erroneously found, as a basis of the judgment rendered. That question does not arise upon this record.

Among its supporting facts the judgment finds that the defendant, after the accident and in order to increase the safety of its servants, issued an order requiring the turning off the power by the use of the shipper, every time an operator should have occasion to remove shells from the dial; and that if such a rule had been in force at the time of the accident the gate could not have dropped on the plaintiff's hand as it did.

The mere fact that such a rule was made after the accident,

cannot support a conclusion of actionable negligence in not having made it before. *Nalley* v. *Hartford Carpet Co.*, 51 Conn. 524, 531. It also appears from the finding for appeal, that it is not customary nor usual to so turn off the power in the use of similar presses, and that it is not a customary nor usual rule to require it, and that the rule is one difficult, although not impossible, to be enforced.

It further appears from the finding that two other facts, stated in the judgment record and supporting conclusions reached, were found without any evidence and rest solely on an assumption of judicial knowledge claimed to be erroneous. The judgment is founded not only on the conclusion that the injury was caused and the defendant was negligent in the manner found by the court, but also on the conclusion that "the defendant has not proved that it was free from negligence." It is claimed that the court has thus based its judgment on the defendant's failure to disprove possible acts of negligence not relevant to the actual transaction, and that in accordance with such error the court overruled the defendant's claim of law made upon the trial, namely, that the defendant was not bound to prove the nonexistence of every possible negligent act on its part, and that having proved the machine to be of a kind in ordinary use, and that its appliances were in good working order at the time of the accident, it was not bound to exclude all possibility that in some unexplained way the machine failed to operate as usual. The defendant urges that errors in law fatal to the validity of the judgment have intervened in these instances as well as in others specified in the appeal, and that it is apparent from the whole record that the judgment rests upon an erroneous view of the effect of the rule of burden of proof, as well as of the real ground of a master's liability.

It is sufficiently clear that the judgment is erroneous without pursuing the inquiry as to these claims.

In the finding for appeal the trial judge states that at request of the parties he examined the operation of presses, and the press in question in operation, and listened to explanations of the press and its parts and its working, and that his con-

clusions and findings of fact are based in part on what he thus saw and heard.

This statement has no application to conclusions that appear from the record to have been induced, or materially influenced, by an error in law.

Several errors are assigned as to rulings on the admission of evidence. We find no ground for a new trial except in one ruling.

The complaint may be treated as alleging that the occupation of the plaintiff was that of a mill operator, but it alleges nothing to indicate any other or different employment, and contains no other allegation that can support any claim for special damage. Upon the trial the plaintiff offered, and the court admitted against the objections of the defendant, testimony that the plaintiff was employed as an accompanist on the piano, and could earn at that employment $3 an evening.

This testimony was inadmissible for any purpose. The finding says that it was admitted not for the purpose of getting damages for loss of services, but to show the extent of the injury. The fact of her occupation as a pianist and of the amount of her earnings in that occupation, was not relevant to the " extent of the injury." The rule of pleading in this State, unlike that in some States, excludes the recovery of special damages which are not alleged. *Tomlinson* v. *Derby*, 43 Conn. 562, 567. Any amount recovered in view of the diminution of the plaintiff's earning capacity in his special occupation, is necessarily special damage. *Finken* v. *Elm City Brass Co.*, 73 Conn. 423, 425. In the case cited the complaint alleged the occupation by which the plaintiff earned his living, and that the injury received prevented his pursuing that trade. We sustained the admission of evidence of his earning capacity in that trade, because such damage was alleged, but held that its admission to show " the extent of the injury " would have been error had such special damage not been alleged. That decision governs the present case. We can hardly assume that the ruling did no injury, inasmuch as the judgment expressly finds that the plaintiff, " besides working in the factory earned something by her

instrumental music," and that "her ability to earn has been considerably lessened," as facts supporting the conclusion in respect to the actual amount of damage.  If the court, as the judgment seems to indicate, did not regard the damage supported by the special diminution of earning capacity as a special damage which must be alleged, that error would emphasize the injury to the defendant by reason of the error in admitting the evidence.

A few only of the other errors assigned call for notice. The demurrer to the complaint was properly overruled.  The complaint contains a cause of action, and the demurrer was not sufficiently specific to reach defects in form.

The trial court did not err in its conclusion from the facts found, that the plaintiff was the servant of the defendant.  It is plain that she was employed in the defendant's factory, in pursuance of defendant's authority, upon the defendant's work, under the defendant's control, and paid by the defendant. A master cannot evade the legal duties he owes his servants by a mere form in the mode of their employment and in fixing their compensation.

We do not see that the defendant was injured by the ruling that the plaintiff and the employee Lundy were not "fellow-servants;" and the facts found are not necessarily inconsistent with that conclusion.

The trial judge properly declined to mark as "proven," or "not proven," such paragraphs in the draft finding as were not stated in accordance with the rules.  A trial judge may properly refuse to consider such paragraphs, especially if framed in a manner discourteous to the court.

There is error, the judgment of the Superior Court is reversed, and a new trial is ordered.

In this opinion the other judges concurred.